**FILED**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

JUN - 5 2002

LARRY W. PROPES, CLERK
U. S. DISTRICT COURT

| | |
|---|---|
| Salomon Smith Barney, Inc, ) | |
| Plaintiff, ) | |
| v. ) | **VERIFIED COMPLAINT** |
| ) | (FOR INJUNCTIVE RELIEF) |
| Phillip Brice, Kenneth Vilcheck, and ) | |
| Wachovia Securities, Inc. d/b/a Hamilton ) | |
| Joseph Investment Consulting, ) | Case No.: **6 - 0 2 - 1 9 3 5 - 25** |
| Defendants. ) | |

Plaintiff Salomon Smith Barney, Inc. ("Salomon" or "Plaintiff") files this Verified Complaint against Defendants Phillip Brice ("Brice"), Kenneth Vilcheck ("Vilcheck"), and Wachovia Securities, Inc. d/b/a Hamilton Joseph Investment Consulting ("Wachovia") (collectively "Defendants") and alleges as follows:

### Introduction

In this case, Plaintiff seeks to enjoin Brice and Vilcheck, former employees, and Wachovia, their new employer, from violating non-solicitation agreements with Plaintiff. Plaintiff also seeks to enjoin Defendants from misappropriating Plaintiff's trade secret customer information and interfering with Plaintiff's contractual and business relationships.

Phillip Brice was employed by Plaintiff as a broker from October 19, 1981 until Friday, May 31, 2002. Kenneth Vilcheck was likewise employed by Plaintiff as a broker from approximately October 5, 1987 until Friday, May 31, 2002. As a condition of Plaintiff accepting Brice and Vilcheck as employees and incurring substantial costs with on-going training and sales

1

support, affording career opportunities to Brice and Vilcheck during and after various training programs, and providing support services and facilities, Brice and Vilcheck agreed to comply with the Policies and Procedures of Plaintiff, including those contained in the Employee Handbook and in the Travelers/Salomon Smith Barney Principles of Employment.

Plaintiff provided Brice and Vilcheck with on-going training, sales support, a sales assistant, and full operational support. Plaintiff also assisted Brice and Vilcheck in developing customer accounts. Indeed, Plaintiff literally gave Brice and Vilcheck a substantial number of accounts.

After receiving all these benefits, however, Brice and Vilcheck decided to jump ship and join Plaintiff's competitor, Wachovia. Adding insult to injury, on information and belief, Brice and Vilcheck took Plaintiff's trade secrets in the form of customer lists and delivered them to Wachovia, and Defendants are using that information to solicit Plaintiff's customers to transfer their accounts to Wachovia in breach of Brice's and Vilcheck's contractual non-solicitation obligations, their fiduciary obligations, and their obligations under the South Carolina Trade Secrets Act (the "Act").

This is an action for temporary and preliminary injunctive relief resulting from Defendants' continuing breach of contract, breach of fiduciary duty, violation of the South Carolina Trade Secrets Act (the "Act"), and tortious interference with Plaintiff's contractual relations and prospective business opportunity. In breach of Brice's and Vilcheck's contractual and fiduciary duties and in violation of the Act, Brice and Vilcheck have wrongfully solicited Plaintiff's clients and, on information and belief, misappropriated Plaintiff's trade secrets in the form of customer lists and used such information to solicit Plaintiff's customers. Wachovia also has wrongfully solicited Plaintiff's employees and customers in an effort to raid Saloman's

business. Unless restrained by this Court, Defendants will continue their illegal activity to the immediate and irreparable harm of Plaintiff. At stake in this case are approximately 72 of Plaintiff's customer accounts, which contain in excess of $60 million in assets. The commissions generated in those accounts over the past twelve months totaled approximately $240,800.

### Parties, Jurisdiction and Venue

1.

Salomon is a New York corporation with its principal place of business in New York, New York. Salomon is duly registered and licensed to do business in South Carolina.

2.

Brice is a resident of Greenville County, South Carolina.

3.

Vilcheck is a resident of Greenville County, South Carolina.

4.

Wachovia is a North Carolina corporation and maintains offices and does business in Greenville County, South Carolina.

5.

This Court has subject matter jurisdiction over this action pursuant to 28 USC § 1332 because the parties are citizens of different states and the amount in controversy in this action exceeds $75,000, exclusive of interest and costs.

6.

Venue is proper in this District pursuant to 28 USC § 1391(a) in that a substantial part of the conduct giving rise to Plaintiff's claim occurred in this District, and Defendants Brice and Vilcheck reside in this District.

### Grounds For Injunctive Relief Pending Expedited Arbitration

7.

Under the NASD Code of Arbitration Procedure, the merits of the dispute between Plaintiff and Defendants are subject to binding arbitration before the NASD. Pursuant to and in accordance with §10335 of the NASD Code of Arbitration Procedure, Plaintiff will proceed with dispatch with expedited arbitration of the merits of the parties' dispute at such time as a Panel of arbitrators is appointed to hear the dispute, and in compliance with any schedule set by the Panel. In order to resolve this dispute as promptly as possible, Plaintiff either already has commenced an arbitration proceeding against Defendants before the NASD, or will do so as promptly as possible after the filing of this action.

8.

However, §10335 of the NASD Code of Arbitration Procedure expressly permits applications to a Court of competent jurisdiction for provisional injunctive relief pending expedited arbitration on the merits of the controversy. Plaintiff, for the reasons set forth herein, is entitled to such relief to maintain the *status quo* pending arbitration of the merits of the controversy.

### Factual Allegations

A.   **Brice's and Vilcheck's agreements with Plaintiff**

9.

Brice commenced employment with Plaintiff in 1981 as a financial consultant trainee.

10.

On or about October 5, 1987, Kenneth Vilcheck commenced employment with Plaintiff.

11.

On or about July 1, 1997, Brice signed an Account Referral Agreement. On September 18, 1997, Vilcheck signed an Account Referral Agreement. (True and accurate copies of the Account Referral Agreements are attached to the affidavit of Richard Kendrick as Exhibit D).

12.

In addition to agreeing to keep any and all information related to assigned accounts confidential, Brice and Vilcheck agreed as follows:

> **4.     Covenant Not to Solicit.**  If, at any time, I resign from [Salomon], provoke my termination, or am terminated for cause, I agree that for a period of one year following my termination I will not solicit by mail, by phone, by personal meeting, or by any other means, either directly or indirectly, any of the Assigned Accounts or Related Accounts. My agreement "not to solicit" means that I will not, during my employment and for a period of one year thereafter, initiate any contact or communication, of any kind whatsoever, for the purpose of inviting, encouraging or requesting any such account:
>
> (a)   to transfer from [Salomon] to me or to my new employer, or
> (b)   to open a new account with me or with my new employer, or
> (c)   to otherwise discontinue its patronage and business relationship with [Salomon].

13.

Pursuant to these agreements, Plaintiff assigned certain assigned accounts and assigned leads to Brice and Vilcheck.

14.

In addition, Brice and Vilcheck also agreed to be bound by Plaintiff's Principles of Employment. A true and correct copy of the Principles of Employment is attached to the

Kendrick Affidavit as Exhibit A. In the Principles of Employment, they agreed to observe Plaintiff's policies, to maintain the highest standards of conduct and to act with the highest ethical principles, to refrain from doing anything that may be a conflict of interest with their responsibilities as employees of Plaintiff, and never to use nor disclose to anyone not affiliated with Plaintiff any confidential or unpublished information obtained as a result of their employment with Plaintiff. Brice and Vilcheck agreed further that they would not retain or take with them any writing or other record relating to confidential information after the termination of their employment.

15.

Brice and Vilcheck also agreed to follow Plaintiff's Code of Ethics and Plaintiff's Employee Handbook. A true and correct copy of the "Employee Handbook Receipt Form[s]" are attached to the Kendrick Affidavit as Exhibit B. Plaintiff's employee handbook sets forth the code of conduct for all of Plaintiff's employees. The handbook provides that the theft, or inappropriate removal or possession, of Plaintiff's property and the failure to maintain the confidentiality of Firm, customer, or client information is inappropriate and prohibited conduct.

16.

After the commencement of Brice's and Vilcheck's employment, Plaintiff incurred substantial expenses on their behalf. Brice entered Plaintiff's training program and was trained in all aspects of the retail securities brokerage business. During his training periods, Plaintiff paid Brice a salary, living allowance, travel expenses, and other benefits. Both Brice and Vilcheck attended numerous training sessions as well as ongoing training by Plaintiff. Plaintiff also paid Brice's and Vilcheck's registration and licensing fees and provided them with state of the art operational and administrative support.

17.

Plaintiff provided Brice and Vilcheck with substantial additional support. Plaintiff provided them with a sales assistant, absorbed a substantial portion of the fee of a consulting analyst, provided other sales support, operational support, access to Plaintiff's research, and ongoing training. Brice and Vilcheck also benefited from Plaintiff's national advertising.

18.

Plaintiff also assigned a substantial number of Plaintiff's accounts to Brice and Vilcheck, which accounts they never would have obtained on their own. These accounts have assets totaling approximately $38.8 million.

19.

During Brice's and Vilcheck's tenure at Plaintiff, they also were given access to and jointly serviced a number of accounts with other Salomon brokers and shared commissions on the transactions in those accounts. These accounts have assets totaling approximately $21.8 million.

### B.     Plaintiff Protects Its Trade Secrets

20.

Plaintiff places great emphasis on protecting and maintaining the confidentiality of its customers' personal and financial information. Plaintiff distributes to all of its employees the "Citibank Privacy Promise for Consumers: Privacy Protection at Salomon Smith Barney" ("Privacy Promise"). The Privacy Promise supplements the confidentiality and security obligations described in the Employee Handbook. Employees of Plaintiff who breach Salomon's confidentiality standards are subject to disciplinary action, including dismissal. The Privacy Promise represents to Salomon)'s customers that:

1.  [Salomon] will safeguard, according to strict standards of security and confidentiality, any information our customers share with us. . . .

3.  [Salomon] will permit only authorized employees, who are trained in the proper handling of customer information, to have access to that information. . . .

4.  [Salomon] will not reveal customer information to any external organization unless we have previously informed the customer in disclosures or agreements, have been authorized by the customer, or are required by law.

21.

Salomon's Greenville office exerts substantial efforts to maintain the secrecy and confidentiality of its customer records, including information identifying customers. In addition to the agreements, acknowledgments, and policies discussed above, those efforts include a number of protective and security measures. For example, Salomon's office is kept locked and secure during non-working hours, and the building is monitored by a security firm. The computer system is password protected, and only the broker, sales assistants, necessary operational personnel, and the branch manager have access to the broker's account information. Brokers do not generally have access to other brokers' account information. Customer information that Salomon is required to maintain is kept secure in the operations area, to which access is very restricted and which is kept locked. Other customer information that Salomon is not required to maintain is routinely shredded to prevent confidential customer information from falling into the hands of third parties.

22.

Salomon's customer information, including customer lists, derives actual and potential economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from their disclosure or use. In particular in this case, Salomon's customer lists and customer information derive substantial

8

economic value from not being known to or readily ascertainable by Wachovia, a direct competitor in the State of South Carolina.

### C. Brice and Vilcheck's Resignation from Salomon Smith Barney, Inc.

23.

On Friday, May 31, 2002 at 4:45 p.m., Brice and Vilcheck resigned from Salomon to join Salomon's competitor, Defendant Wachovia. Brice and Vilcheck each delivered to Plaintiff a resignation letter, true and correct copies of which are attached to the Kendrick Affidavit as Exhibit E.

24.

In the wake of Brice's and Vilcheck's resignation, Richard Kendrick, the Greenville Resident Manager, and the brokers in the Greenville office of Salomon began calling Salomon's customers who previously were serviced by Brice and Vilcheck. Numerous customers, including customers covered by the Account Referral Agreements, and customers jointly serviced with brokers still employed by Salomon, stated that Brice and Vilcheck had contacted them since their resignation from Salomon.

25.

Numerous customers also informed Salomon that the customers received a package (which was sent via overnight mail) from Brice and Vilcheck on Saturday, June 1, the day after they resigned. This package contained a cover letter from Brice and/or Vilcheck announcing the move to Wachovia and soliciting the customer to transfer his or her account to Wachovia. The package also contained the forms necessary to transfer the accounts, including Salomon account numbers.

26.

Upon information and belief, Brice and Vilcheck sent the same package to all the customers that Brice and Vilcheck serviced and/or shared with other brokers. The fact that Brice and Vilcheck sent packages to all of their customers indicates that they must have taken documents from Salomon containing that information. The fact that Defendants sent this "mass mailing" the day they resigned for receipt by Salomon's customers the day after they resigned, demonstrates that Brice and Vilcheck provided Salomon's customer information to Wachovia prior to their resignation from Salomon.

27.

Brice and Vilcheck serviced approximately 72 Assigned Accounts and/or Split Accounts. Those accounts contained assets exceeding $60 million. The commissions generated in those specific accounts during the preceding twelve months total approximately $240,800.

28.

Should Brice and Vilcheck continue to solicit Salomon's customers in breach of their contractual and fiduciary duties and use Salomon's trade secret customer information to induce wrongfully Salomon's customers to transfer their accounts to Wachovia, Salomon will suffer harm that cannot be undone.

**Count I**

**Breach of Non-Solicitation Agreements by Brice and Vilcheck**

29.

Plaintiff incorporates by reference paragraphs 1 - 28 above.

30.

On or about July 1, 1997, Brice entered into an Account Referral Agreement in which he

agreed that if he resigned from Salomon, he would not solicit "Assigned Accounts" and "Related Accounts" for a period of one year after termination of his employment.

31.

On or about September 18, 1997, Vilcheck entered into an Account Referral Agreement in which he agreed that if he resigned from Salomon, he would not solicit "Assigned Accounts" and "Related Accounts" for a period of one year after termination of his employment.

32.

Plaintiff fulfilled in all material respects its contractual obligations in the Account Referral Agreements.

33.

On May 31, 2002, Brice and Vilcheck voluntarily terminated their employment with Plaintiff and commenced employment with Wachovia in its Greenville, South Carolina office. Brice and Vilcheck currently are soliciting "Assigned Accounts" and/or "Related Accounts."

34.

As a result of the above, Brice and Vilcheck have materially breached their Account Referral Agreements, and Brice and Vilcheck will commit further such breaches unless restrained by this Court. There is no adequate remedy at law available to Plaintiff. Therefore, Plaintiff is entitled to a temporary restraining order and a preliminary injunction enjoining Brice and Vilcheck from soliciting "Assigned Accounts" and "Related Accounts" in violation of the Account Referral Agreements.

## Count II

### Breach of Fiduciary Duty by Brice and Vilcheck

35.

Plaintiff incorporates by reference paragraphs 1-34, above.

36.

In light of the relationship of trust between Plaintiff and Brice and Vilcheck, a confidential relationship existed between Plaintiff and Brice and Vilcheck under South Carolina law. This relationship expressly imposed upon Brice and Vilcheck a duty to maintain the confidence and secrecy of Plaintiff's customer information and especially a duty not to disclose such information to Plaintiff's competitors.

37.

As a result, Brice and Vilcheck owed Plaintiff fiduciary duties, including duties of loyalty, honesty, and utmost good faith.

38.

Upon information and belief, Brice and Vilcheck breached their fiduciary duties and obligations to Plaintiff by misappropriating Plaintiff's customer information, providing it to Wachovia, and using it to solicit Plaintiff's clients.

39.

As a direct and proximate result of Brice's and Vilcheck's breaches of their fiduciary duties to Plaintiff, Plaintiff has suffered and will continue to suffer irreparable injury and financial losses that are incalculable, as described hereinabove.

## Count III

## Trade Secret Misappropriation

40.

Plaintiff incorporates by reference paragraphs 1-39, above.

41.

The South Carolina Trade Secrets Act prohibits any person from utilizing the trade secrets of another for that person's commercial advantage. The Act defines trade secrets to include:

> [I]nformation, including a formula, pattern, compilation, program, device, method, technique, or process, that:
>
> (i)   derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by other person who can obtain economic value from its disclosure or use, and
>
> (ii)  is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

42.

Plaintiff's customer lists and customer information, whether recorded on paper or in computerized form or otherwise, constitute trade secrets under the South Carolina Trade Secrets Act.

43.

On information and belief, Defendants obtained Plaintiff's trade secrets by improper means, including theft and a breach or inducement of a breach of a contractual obligation or a confidential relationship or other duty to maintain the secrecy or limit the use of the trade secret information.

13

44.

Defendants have misappropriated Plaintiff's trade secrets because they acquired such trade secrets knowing or having reason to know that the trade secrets were acquired by improper means and because they have improperly disclosed or used Plaintiff's trade secrets.

45.

The conduct of Defendants described above constitutes misappropriation of Plaintiff's proprietary information and trade secrets in violation of the South Carolina Trade Secrets Act.

46.

If not immediately enjoined by way of a temporary restraining order and a preliminary injunction, Defendants will continue to use, disclose, and misappropriate Plaintiff's trade secrets.

47.

Unless immediately and preliminarily enjoined by this Court by way of a temporary restraining order, Defendants' misappropriation of Plaintiff's trade secrets will continue to injure Plaintiff, and there is no adequate remedy at law for such irreparable injury.

## Count IV

### Tortious Interference

48.

Plaintiff incorporates by reference paragraphs 1-47, above.

49.

Plaintiff has valid and existing contracts with Brice, Vilcheck, and with its customers.

50.

Wachovia knows of the existence of Plaintiff's contract with Brice and Vilcheck and, independently and through knowledge Brice and Vilcheck gained while employed with Plaintiff,

knowledge of the existence of the contracts between Salomon and its customers.

51.

Defendants acted without justification in maliciously, willfully, and tortiously interfering with Plaintiff's contractual relations and prospective business opportunities.

52.

Wachovia's tortious conduct in inducing Brice and Vilcheck to breach their contracts with Plaintiff, in inducing them to misappropriate Plaintiff's trade secret information, and in assisting them in doing so should be restrained and enjoined by this Court. There is no adequate remedy at law available to Plaintiff.

WHEREFORE, Plaintiff respectfully requests that this Court:

A.     Enter a Temporary Restraining Order and/or a Preliminary Injunction Order immediately restraining and enjoining Phillip Brice, Kenneth Vilcheck, Wachovia, and all persons acting in concert with them, from directly or indirectly:

1. Soliciting any clients whose accounts are Assigned Accounts or Related accounts as set forth in the Account Referral Agreements executed by Brice and Vilcheck, and accounts jointly serviced with other Salomon brokers[1]; and
2. Using, disclosing, or transmitting for any purpose (including but not limited to solicitation of said clients), any information contained in the records of Salomon, including but not limited to, the names, addresses, and financial information of said clients.

B.     Require Defendants to return to Salomon as promptly as possible all originals, copies or other reproductions, in any form whatsoever, of any record of Salomon, and to purge or destroy any computerized record of Salomon that is within Defendants' possession, custody or

---

[1] The term "solicit" means initiating any contact or communication, of any kind whatsoever, for the purpose of inviting, encouraging, or requesting account to transfer from Plaintiff to Defendants Brice, Vilcheck, or Wachovia, or to open a new account with Brice, Vilcheck, or Wachovia, or to otherwise discontinue its patronage and business relationship with Plaintiff.

control, and to provide certification of same to this Court;

C. Award Salomon all costs and expenses incurred in connection with this action, including, its reasonable attorneys' fees; and

D. Grant Salomon such other and further relief as the Court deems to be just and equitable.

Respectfully submitted:

_____
W. Howard Boyd, Jr. (Fed. I.D. #1431)
Aimee R. Davis (Fed. I.D. #7027)
GALLIVAN, WHITE & BOYD, PA
P.O. Box 10589
Greenville, SC 29603
864/271-9580

Attorneys for Plaintiff

Greenville, South Carolina

June 5, 2002

16